IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| CATHERINE SPARKS,            ) | |
|                              ) | |
|     Plaintiff,               ) | |
|                              ) | |
| v.                           ) | Case No.: 5:08-CV-02429-RDP |
|                              ) | |
| MICHAEL ASTRUE,              ) | |
| Commissioner of Social Security, ) | |
|                              ) | |
|     Defendant.               ) | |

**MEMORANDUM OF DECISION**

Catherine Sparks ("Plaintiff") brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act") denying her claim for a period of disability and Supplemental Security Income ("SSI") benefits. *See* 42 U.S.C. §§ 405(g) and 1383(c). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.    Procedural History**

Plaintiff applied for disability and SSI benefits on May 12, 2006, alleging an onset date of disability of May 2, 2006. (Tr. 351). Plaintiff's application was denied on August 28, 2006, prompting Plaintiff to request a hearing before an Administrative Law Judge ("ALJ"). (Tr. 330, 324-29). Plaintiff's case was heard by ALJ Randall C. Stout on October 29, 2007. (Tr. 298-322, 334). In his December 17, 2007 decision, the ALJ determined that Plaintiff was not eligible for disability or SSI benefits because she retained the residual functional capacity ("RFC") to perform certain light work and was also capable of performing some past relevant work. (Tr. 9-22).

After the ALJ issued his decision, Plaintiff filed a request for a review of the decision to the Appeals Council. (Tr. 7-8). In her request, Plaintiff submitted additional evidence consisting primarily of Physical RFC Questionnaires completed by two of Plaintiff's treating physicians. (Tr. 4, 8, 608-13). Despite this new evidence, the Appeals Council denied Plaintiff's request for review on December 2, 2008. (Tr. 1-3). This denial by the Appeals Council made the ALJ's decision the final decision of the Commissioner and therefore, a proper subject for this court's review.

Plaintiff was born on January 6, 1958, and she completed high school and received an undergraduate business degree. (Tr. 301, 335-37). Plaintiff worked as a bookkeeper and accountant at Superior Carpets from 1992-1996, and then performed substantially the same job at the Carpet Connection from 1996-2006. (Tr. 315, 367-74). Prior to 1992, Plaintiff worked various jobs, including work done through a temp office and some brief work as a cashier in a grocery store. (Tr. 367-71). Plaintiff alleges that she has been unable to engage in substantial gainful activity since May 2, 2006, when she became unable to work due to herpes in the right eye, keratoisis conjuntivitis, chronic dry eye, her right eye ball being perforated twice, a fungus on her right eye, small cataracts in both eyes, severe irritable bowel syndrome, a small heart murmur, the onset of high blood pressure, high cholesterol, tennis elbow in both arms, bone spurs on the left elbow and both hip joints, a rod that extends from her knee to her left leg, gastroenteritis, acid reflux, and chronic sinusitis. (Tr. 355).

In early 2002, Plaintiff sought the help of Dr. Robert Phillips at The Callahan Eye Foundation Hospital at UAB in Birmingham, Alabama. (Tr. 408-439). Dr. Phillips noted a possible history of herpes in Plaintiff's right eye, but tests for herpes on March 6, 2002 and April 23, 2002, both came back negative. (Tr. 423, 426, 431, 436). On May 6, 2002, Dr. Phillips performed a penetrating

keratoplasty on Plaintiff's right cornea. (Tr. 417-18). It was noted that Plaintiff tolerated the procedure well. (*Id.*). Another test performed by Dr. Phillips on December 11, 2002, also found no herpes in Plaintiff's eye. (Tr. 412).

On February 27, 2006, Plaintiff saw Dr. Don Hirsbrunner for a problem with her finger, which had been crushed while moving carpet. (Tr. 453). On March 9, 2006, Dr. Hirsbrunner performed a pinch graft from Plaintiff's left forearm to her long left finger. (Tr. 450). After seeing Plaintiff in follow-up visits, Dr. Hirsbrunner concluded on April 3, 2006 that Plaintiff's finger was looking much better and cleaning up nicely. (Tr. 447). At that time, Dr. Hirsbrunner instructed Plaintiff to merely keep Neosporin and a Band-Aid on her finger. (*Id.*).

On March 24, 2006, Plaintiff presented to Dr. Judge with complaints of pain and dryness in her right eye. (Tr. 461-62). At that time, Dr. Judge prescribed flaxseed oil and instructed Plaintiff to apply the oil frequently. (*Id.*). On April 17, 2006, Plaintiff returned to Dr. Judge's office and reported that she was experiencing less pain in her right eye. (Tr. 460). Additionally, Dr. Judge noted that most of the redness in Plaintiff's eye was gone. (*Id.*). Dr. Judge prescribed Acyclovir and Celluvisc and continued to treat Plaintiff's eye. (*Id.*). At a follow-up visit on April 20, 2006, Plaintiff again reported that her eyes were getting better. (Tr. 459). On April 24, 2006, Plaintiff presented to Dr. Judge's office and stated that her pain was nonstop. (Tr. 458). On May 3, 2006, Plaintiff stated that the vision in her right eye was almost completely gone and that she could only see minimal light in that eye. (Tr. 457). Dr. Judge then referred Plaintiff to Dr. Parker. (*Id.*).

Dr. Parker saw Plaintiff that same day of May 3, 2006, and noted that she had a corneal perforation. (Tr. 508-09). A test for herpes in the eye came back negative. (Tr. 512). That same day, Dr. Parker performed a scraping of Plaintiff's corneal ulcer. (Tr. 469-70). On May 4, 2006, Dr.

Parker saw Plaintiff again and instructed her not to rub the eye and to shield it at night. (Tr. 511). Additionally, Dr. Parker prescribed Zymar and Ciloxan. (*Id.*). On May 9, 2006, Dr. Parker diagnosed Plaintiff with fungal keratitis in her right cornea. (Tr. 515). On May 10, 2006, Dr. Parker performed another corneal scraping on Plaintiff's right eye. (Tr. 515-16). He also prescribed Tylox, Atropine and Flucenazale at that time. (*Id.*). However, on May 11, 2006, Dr. Parker noted that Plaintiff's fungal elements were growing. (Tr. 517).

On May 19, 2006, Dr. Parker reported that Plaintiff had an uncontrolled fungal infection with a perforated corneal ulcer. (Tr. 524-25). On that same day, Dr. Parker performed a penetrating keratoplasty on Plaintiff's right eye, as well as an extracapsular cataract extraction of the right eye. (Tr. 525). Dr. Parker saw Plaintiff for a follow-up visit the next day and noted that her vision was still poor. (Tr. 526). On May 22, 2006, Plaintiff reported nonstop, throbbing pain in her eye and the surrounding skin. (Tr. 527). One week later, Plaintiff reported that she was still light sensitive but that the pain had dulled and she felt more comfortable. (Tr. 528). Dr. Parker prescribed Plaintiff Natocyn. (*Id.*). On June 7, 2006, Plaintiff stated that her pain was still present but not unbearable, and she was still light sensitive. (Tr. 529). On June 19, 2006, Plaintiff reported that her eye pain had been much better since she began taking sinus infection medication. (Tr. 530). On July 5, 2006, Plaintiff told Dr. Parker that her vision was no better and that she still had some pain, but that was mostly at the end of the day. (Tr. 532).

On July 13, 2006, Dr. Robert Soulages, who had seen Plaintiff previously, noted that Plaintiff was blind in her right eye. (Tr. 533-34). On August 14, 2006, Plaintiff saw Dr. Martin Gill for a disability examination. (Tr. 538-39). Dr. Gill noted that Plaintiff was blind in her right eye and suffered from some joint pains. (Tr. 539).

Plaintiff continued to see Dr. Parker throughout 2007. (Tr. 545-606). On June 19, 2007, Dr. Parker performed an external diode cyclophotocoagulation on Plaintiff. (Tr. 557). On September 21, 2007, Plaintiff reported that her pain was not nearly as bad as it had been previously but that she still experienced some pain on occasion. (Tr. 546).

Plaintiff also obtained Physical RFC Questionnaires and had them filled out by both Dr. Phillip W. Freeman and Dr. Hirsbrunner. (Tr. 608-19). Dr. Freeman indicated that he believed Plaintiff could not even perform low stress jobs. (Tr. 610). Dr. Hirsbrunner indicated that he thought Plaintiff could handle moderate stress jobs. (Tr. 616). These two questionnaires were not filed in time to be examined by the ALJ but were considered by the Appeals Council. (Tr. 4, 8).

## II.    ALJ Decision

Determination of disability proceeds under a five step analysis. 20 C.F.R. § 404.1520(a). First, the Commissioner determines if the claimant is engaged in substantial gainful activity. 20 C.F.R. § 1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, she is not deemed to be disabled under the Act. Second, the Commissioner determines if the claimant has a severe, medically determinable impairment that meets the durational requirement. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. 1509. If the claimant does not possess such an impairment, she is not disabled. Third, the Commissioner decides if the impairment meets or medically equals the criteria for an impairment listed in 20 C.F.R. Part 404 Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment does not meet the listing, the claimant is not disabled. Fourth, the Commissioner determines whether the claimant possesses the RFC to do past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A claimant's RFC is what the claimant can do despite her impairments. If the claimant can perform past relevant work, she is not disabled. Fifth, the Commissioner

determines whether the claimant can perform other work based on her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If she can perform other work, the claimant is not disabled. If the claimant is deemed not to be disabled at any point in the process, the analysis ends. 20 C.F.R. § 404.1520(a)(4).

The ALJ found that Plaintiff has not engaged in substantial gainful activity since May 2, 2006, her alleged onset date of disability. (Tr. 14). The ALJ determined that Plaintiff has the severe impairment of chronic infection of the right eye with a loss of visual acuity and with some residual pain and discomfort, and status post history of left femur fracture and residual discomfort. (*Id.*). However, the ALJ determined that these impairments fail to meet or medically equal the impairments listed in 20 C.F.R. Part 404 Subpart P, Appendix 1. (Tr. 15). Specifically, the ALJ held that Plaintiff's 20/30 vision in her left eye does not meet listing 2.02, which requires remaining vision to be 20/200 or worse. Also, the ALJ found that Plaintiff maintained the RFC to perform some light work and even some past relevant work. (Tr. 16-21). Based on these conclusions, the ALJ determined that Plaintiff was not disabled as the Act defines that term. (Tr. 21).

### III.    Plaintiff's Argument for Reversal

Plaintiff posits three reasons why this court should reverse the decision of the ALJ: (1) the ALJ erred as a matter of law in disregarding the opinions of Plaintiff's treating physicians; (2) the ALJ failed to consider Plaintiff's subjective complaints of pain in his determination that she could perform light work and some past relevant work; and (3) the Appeals Council erred in refusing to grant review despite the submission of new evidence. (Doc. # 9, at 8-18).

**IV.     Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.      Discussion**

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for reversal. For the reasons outlined below, the court finds that the ALJ appropriately weighed the

7

opinion of Plaintiff's treating physician and adequately considered Plaintiff's subjective complaints of pain. Furthermore, remand due to the Appeals Council's refusal to grant review in this case would not be appropriate under sentence six of 42 U.S.C. § 405(g) and *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253 (11th Cir. 2007).

### A. The ALJ Appropriately Weighed the Opinion of Plaintiff's Treating Physician

Plaintiff's first argument is that the ALJ improperly ignored the pain medications prescribed by Dr. Parker which show that Plaintiff was in a substantial amount of pain and could not perform work. (Doc. # 9, at 9-10).

It is evident from the record that Dr. Parker was in fact Plaintiff's primary treating physician. However, contrary to Plaintiff's assertions, the ALJ's clear, lucid review of Dr. Parker's findings dominates a substantial portion of the ALJ's opinion. Dr. Parker was mentioned by name at least seven times in the opinion. (Tr. 17-18). The inclusion was not mere name-dropping; the ALJ cited to multifarious specifics and minutiae from Dr. Parker's lengthy medical records concerning Plaintiff. At one point, the ALJ used Dr. Parker's medical records to refute some of the testimony Plaintiff gave at her hearing. (Tr. 18). At another, the ALJ even noted the two specific instances when Dr. Parker prescribed pain medication by their respective dates. (Tr. 18). Therefore, the ALJ did not ignore the evidence of the pain medications prescribed by Dr. Parker and clearly did not ignore the opinion of Dr. Parker generally.

Both Dr. Soulages and Dr. Hirsbrunner treated Plaintiff at the time relevant to Plaintiff's disability claim. However, the ALJ considered their findings in relative proportion to the amount of time they spent treating Plaintiff, which was substantially less than the time Dr. Parker spent with Plaintiff.

Thus, Plaintiff's assertion is off the mark. That much becomes obvious from a mere reading of the holding below. The ALJ fully considered and appropriately weighed the findings of each of Plaintiff's treating physicians, including Dr. Parker.

**B.     The ALJ Adequately Considered Plaintiff's Subjective Complaints of Pain in His Determination That Plaintiff Could Perform Some Light Work**

Plaintiff next argues that the ALJ failed to adequately consider Plaintiff's subjective complaints of pain in the determination that Plaintiff could perform some light work. (Doc. # 9, at 10). The court disagrees.

In the Eleventh Circuit, a claimant's subjective complaints of pain are evaluated under a clearly articulated "pain standard." The standard requires "evidence of an underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain." *Foote v. Charter*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

In support of her argument, Plaintiff also notes that a claimant's "[p]ain alone can be disabling, even when its existence is unsupported by medical evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (citing *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987)). And while generally that is true, Plaintiff conveniently ignores the Eleventh Circuit's statement two sentences later: "[a]fter considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984).

In this case, the ALJ explicitly considered both the complaints of pain that Plaintiff made at her hearing and the evidence of her prescriptions for pain medication. (Tr. 18). However, the ALJ determined that medical evidence showed Plaintiff's complaints were not entirely credible. (*Id.*). The medical evidence included statements made by Plaintiff to her various treating physicians describing her pain as "tolerable" and "not unbearable." (Tr. 529, 541). Plaintiff also later noted that her eye pain was only occasional and "not near as painful." (Tr. 546). Also, there is no medical evidence in the record to support Plaintiff's assertions that she frequently injures herself as a consequence of the blindness in her right eye. Therefore, substantial evidence exists to support the ALJ's determination that Plaintiff's subjective complaints of pain are not entirely credible. Additionally, the ALJ included his consideration of Plaintiff's subjective complaints in his determination that Plaintiff could perform light work. (Tr 18-20).

It is true that the ALJ did not set out the *Foote* "pain standard" verbatim in his opinion. However, the various ways in which the ALJ considered Plaintiff's subjective complaints of pain in conjunction with the extensive evidence of objective medical findings convinces the court, that "[a]lthough the ALJ did not expressly cite to the applicable standard, the ALJ's findings and discussion indicate that he was aware of and applied the proper standard." *Hummel v. Astrue*, 2007 WL 2492460 *4 (M.D. Fla. 2007) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002)).

    **C.**    **It Would Not be Appropriate to Remand This Case Under Sentence Six of 42 U.S.C. § 405(g) Due to the Appeals Council's Refusal to Grant Review**

Plaintiff argues that, because the Appeals Council was presented with new, material evidence but failed to grant review, this court should remand the case pursuant to sentence six of 42 U.S.C. § 405(g). The new evidence consisted primarily of physical RFC questionnaires from Dr. Philip

Freeman, who apparently became one of Plaintiff's treating physicians very recently and reported that he thought Plaintiff could not even perform "low stress" jobs, and Dr. Hirsbrunner, who treated Plaintiff for an injury to her finger in 2006 and reported that he thought Plaintiff could perform "moderate stress" jobs. (Tr. 608-19). Because the court determines as a matter of law that sentence six remand is inappropriate in this context, it need not reach the question of whether or not the new evidence was material.

For a district court to remand pursuant to the sixth sentence of 42 U.S.C. § 405(g), a claimant must establish that:

> (1) new, noncumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level.

*Id.* However, the Eleventh Circuit recently clarified exactly what circumstances allow a district court to remand pursuant to sentence six. In *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1269 (11th Cir. 2007), the Eleventh Circuit stated that "[s]entence six allows the district court to remand to the Commissioner to consider previously unavailable evidence; it does not grant a district court the power to remand for reconsideration of evidence previously considered by the Appeals Council." *Id.*

In *Ingram*, the claimant submitted new evidence to the Appeals Council that was received, considered, and entered into the record. *Id* at 1259. For this reason, the Eleventh Circuit held that the district court's refusal to remand pursuant to sentence six was appropriate. *Id.* at 1269. Likewise, in this case, the Appeals Council received the new evidence and properly entered it into the record. (Tr. 4). Therefore, under *Ingram*, this court cannot remand this case pursuant to sentence

11

six. Sentence four of 42 U.S.C. § 405(g) is the proper method for remand. *Ingram*, 496 F.3d at 1269. But Plaintiff has neither argued for (*see* Doc. #9 at p.19 ("[T]here is no need to remand this case for further development under the fourth sentence of 42. U.S.C. §450(g)") nor otherwise demonstrated that she is entitled to remand under sentence four in any event.

## VI. Conclusion

For the reasons stated above, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this ___16th___ day of March, 2010.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE